Opinion filed October 31, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00019-CV

_____

**MICHAEL A. RUFF, Appellant**

**V.**

**SUZANN RUFF, Appellee**

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C46164**

## M E M O R A N D U M   O P I N I O N

This appeal is the latest development in a series of lawsuits in which Appellee Suzann Ruff seeks to recover millions of dollars that, according to an arbitration award, were taken from her by Appellant Michael A. Ruff, who is her son.

In this appeal, Michael,[1] appearing pro se both at trial and on appeal, complains that the trial court erred when it denied his most recent motion to dismiss under the Texas Citizens Participation Act (TCPA). TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011 (West 2020 & Supp. 2024). He also complains that the trial court erred when rendered an award of sanctions against him under the TCPA. We affirm.

*Background Facts*

In 2011, Suzann filed suit against Michael in a Dallas County probate court. *Ruff v. Ruff*, No. 05-18-00326-CV, 2020 WL 4592794, at *2 (Tex. App.—Dallas Aug. 11, 2020, pet. denied) (mem. op.) (*Ruff II*). Michael moved to arbitrate the case, and his motion was granted. *Id.* In the probate court, as well as the arbitration, Suzann maintained that Michael had acted improperly while acting as her fiduciary, resulting in the loss of millions of dollars. *Id.*

In the meantime, on October 21, 2014, Suzann filed another lawsuit in Palo Pinto County relating to a 4,083-acre property that is situated therein. Suzann named five business entities as defendants in her initial pleading. Suzann alleged that the entities had engaged in a series of transactions in connection with the property that constituted a breach of fiduciary duty and conversion. Shortly thereafter, the defendants filed a motion to stay the proceeding, arguing that similar claims involving the same property were the subject of the Dallas County arbitration.

While the arbitration was pending, the arbitration panel issued sanctions against Michael. Among other things, the panel found that Michael had failed to comply with its instructions to produce documents, and that both Michael and his counsel had violated the panel's direct orders to answer questions in connection with

---

[1]Because several individuals involved in this litigation have the same surname, we will refer to them by their first names in this opinion for clarity.

Michael's oral deposition about various entities allegedly under his control. It also found that Michael admitted that he had drafted letters and submissions expressing "defiance and hostility against the rulings of the Panel," even though the submissions were signed by his counsel. As a result of these and other findings, the panel struck Michael's claims and defenses therein.

On December 7, 2017, the arbitration panel awarded Suzann over fifty-million dollars against Michael. Among other things, the panel found that Michael defrauded Suzann, and breached fiduciary duties that he owed Suzann in managing numerous assets on her behalf. The arbitration award also imposed a constructive trust in favor of Suzann for "any entity which [Michael] formed or invested, in whole or in part with monies or property misappropriated from, and originating with Suzann." Attached to the award was a nonexclusive list of entities against which a constructive trust was imposed. Three out of five of the entities named in the Palo Pinto County lawsuit were also listed in the arbitration award.

After the arbitration award was issued, the probate court ordered Michael not to move any assets under his control. *See Borderline Mgmt., LLC v. Ruff*, No. 11-19-00152-CV, 2020 WL 1061485, at *2 (Tex. App.—Eastland Mar. 5, 2020, pet. denied) (mem. op.) (*Ruff I*). This order included a prohibition against the movement of assets by any entities which he controlled. *See id.* Within days, Michael's attorneys formed Borderline Management, LLC (Borderline). *Id.* Michael then resigned from several entities involved in the development of property in Palo Pinto County, and Borderline was substituted in his place. *Id.* However, even after the transfer, Michael remained in effective control of those entities. *Id.*

During the same timeframe, Michael asked the probate court to vacate the award. *Ruff II*, 2020 WL 4592794, at *3. The probate court conducted an extensive evidentiary hearing, after which it confirmed the award. *Id.* at *4. Michael appealed

3

to the Dallas Court of Appeals, which affirmed the confirmation of the award. *Id.* at \*15.

On December 27, 2017, the trial court entered an order lifting the stay of the Palo Pinto County litigation. At that point, Michael was also a defendant in the litigation, and—on January 12, 2018—the trial court ordered expedited discovery, which included a timeline for the production of documents, followed by the deposition of Michael. Michael and the other defendants failed to comply with the order. Thereafter, a new order was entered, requiring Michael to appear for additional deposition testimony. During the following six months, Suzann conducted additional discovery, and filed two more motions to compel discovery, seeking to have the trial court order Michael to answer multiple questions that he had refused to answer concerning the ownership, control, and transfer of assets between the various named entities. Suzann also filed an amended petition adding Borderline as a defendant, along with other entities purportedly concealing assets that were subject to the constructive trust in the arbitration award.

On August 14, 2018, the trial court announced its intention to grant Suzann's motion to compel, which included a request for sanctions. The following day, one of the named entities—CM Resort LLC—filed a suggestion of bankruptcy, which automatically stayed the proceedings pending the resolution of the bankruptcy. *See* 11 U.S.C. § 362(a)(1).

On September 26, 2018, the bankruptcy court severed the claims against the defendants who had not filed bankruptcy and remanded them to the trial court, noting that it saw the bankruptcy cases "as being merely the most recent installment of [Michael's] efforts to hinder and delay [Suzann]." The next day, Michael moved to disqualify the presiding trial court judge, Judge Michael Moore, once again pausing proceedings pending resolution of the motion.

Judge David Evans, the presiding judge for the Eighth Administrative Judicial Region, held a hearing on the motion to disqualify Judge Moore on October 23, 2018. Judge Evans issued an order denying the motion on December 19, 2018. Michael then filed a *second* motion to disqualify Judge Moore on January 2, 2019, after which Judge Moore voluntarily recused himself. Judge Robert Brotherton was assigned in his place.

Suzann filed a sixth amended petition on February 14, 2019. Shortly thereafter, Borderline filed a motion to dismiss under the TCPA. The trial court denied the motion to dismiss and severed the claims against Borderline from the rest of the case.

On April 22, 2019, Judge Brotherton issued an order granting Suzann's motion to compel, which had been pending for well over a year by that time. Judge Brotherton also struck the affirmative defenses of Michael and Clayton Mountain Development, LLC (CMD), one of the entity defendants, finding that they had repeatedly violated discovery orders.

Suzann filed her seventh amended petition on October 17, 2019. In the petition, Suzann sought to impose a constructive trust against CMD and other entities, including several that were listed in the arbitration award. Additionally, she alleged that any entities that qualified as Michael's alter ego were in breach of a fiduciary duty, and that such entities conspired with Michael in connection with his own breaches of fiduciary duty. Suzann also sought an accounting from Michael and any entities found to be his alter ego.

After Suzann filed her seventh amended petition, Michael sought to dismiss the claims therein under the TCPA. The trial court denied the motions and awarded

5

attorneys' fees to Suzann. Michael appealed the trial court's order to this court.[2] We affirmed the trial court's determination that the TCPA did not apply to Suzann's claims, but reversed the award of attorneys' fees. *Clayton Mountain, LLC v. Ruff*, No. 11-20-00034-CV, 2021 WL 3414754, at *9–10 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.) (*Ruff III*).

On February 12, 2020, Michael filed yet another TCPA motion to dismiss. *Ruff v. Ruff*, No. 11-20-00122-CV, 2021 WL 388707, at *2 (Tex. App.—Eastland Feb. 4, 2021, pet. denied) (mem. op.) (*Ruff IV*). This time, the motion was not based on Suzann's pleadings, but on her motion to compel. *Id.* The trial court again denied the motion and ordered sanctions against Michael under the TCPA. *Id.* at *3. We affirmed. *Id.* at *10.

Shortly after Michael filed his TCPA motion to dismiss based on Suzann's motion to compel, Suzann filed an eighth amended petition, which added Jennifer Ruff in her individual capacity[3] to the lawsuit. The eighth amended petition also added two entities as defendants: JAAR Capital LLC and JAAR Irrevocable Trust. Otherwise, there are no material differences between the seventh and eighth amended petitions.

On September 30, 2022, the Texas Supreme Court dismissed a motion for rehearing in *Ruff IV*. One week later, Michael filed another motion to recuse, this time directed at Judge Brotherton. As a result, proceedings were yet again halted pending a ruling on the motion. On November 10, 2022, Judge R.H. Wallace, Jr., sitting by assignment, denied the motion.

---

[2]An interlocutory appeal may be taken from the denial of a motion to dismiss under the TCPA. *See* CIV. PRAC. & REM. § 51.014(12) (West Supp. 2024).

[3]Jennifer had previously answered in her capacity as Trustee of the Commander Neyo Trust.

In the meantime, while the motion to recuse Judge Brotherton was pending, Michael filed a motion to dismiss under the TCPA based on Suzann's eighth amended petition. On January 20, 2023, the trial court denied the motion, finding that it was frivolous, and awarded attorney's fees to Suzann. This interlocutory appeal followed. Like the matters that came before it, Michael's appeal is based on the trial court's denial of his motion to dismiss under the TCPA. *See* CIV. PRAC. & REM. § 51.014(12).

### *Applicability of the TCPA*

In his first issue, Michael argues that the trial court erred because the TCPA applies "to the new facts, new claims, and new parties" in the eighth amended petition.

Under the TCPA, a motion to dismiss must be filed "not later than the 60th day after the date of service of the legal action." CIV. PRAC. & REM. § 27.003(b). Suzann's eighth amended petition names three new defendants. As such, the claims in the eighth amended petition constitute a new "legal action" for purposes of the TCPA, and a motion in response to the eighth amended petition is timely, as long as it is filed within sixty days after service of the new petition.[4] *See Montelongo v. Abrea*, 622 S.W.3d 290, 297 (Tex. 2021). However, the motion can be directed only to the new claims that are asserted therein. *Id.* at 298, 301–02.

The legislature enacted the TCPA "to safeguard 'the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law'" while, at the same time,

---

[4]In this instance, the eighth amended petition was filed on February 18, 2020, and the motion to dismiss was filed on October 7, 2022. In his motion to dismiss, Michael argued that the case had been stayed either by bankruptcy proceedings or other TCPA motions during most of that period, such that only forty-six days had elapsed for purposes of calculating the applicable deadline. Suzann does not contest this claim.

protecting a person's right "to file meritorious lawsuits for demonstrable injury." *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 847 (Tex. 2021) (quoting CIV. PRAC. & REM. § 27.002).

To effectuate this dual purpose, the TCPA employs a three-step process to determine whether a lawsuit or claim is subject to dismissal. *Montelongo*, 622 S.W.3d at 296. First, the movant must demonstrate by a preponderance of the evidence that a legal action is based on, or in response to, the movant's exercise of one of three rights protected by the statute: (1) the right of free speech, (2) the right to petition, or (3) the right of association. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *see also Montelongo*, 622 S.W.3d at 296. Next, if the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence" a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Montelongo*, 622 S.W.3d at 296. Finally, even if the nonmovant meets that burden, the trial court is required to dismiss the legal action if the movant establishes by a preponderance of the evidence each essential element of a valid defense to the challenged claim. CIV. PRAC. & REM. § 27.005(d).

During the first step of the TCPA analysis, we consider whether Michael has established, by a preponderance of the evidence, that the new claims are based on, or in response to, his exercise of a protected legal right. CIV. PRAC. & REM. § 27.003(a). In assessing whether a protected right is at issue, we consider the pleadings and affidavits that state the facts on which liability is based to determine the true nature of the dispute. *See* CIV. PRAC. & REM. § 27.006(a); *David H. Arrington Oil & Gas Operating, LLC v. Wilshusen*, 630 S.W.3d 184, 190 (Tex. App.—Eastland 2020, pet. denied); *Ruff III*, 2021 WL 3414754, at *5. The plaintiff's pleading is the "best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards*

8

*Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (1936)); *Wilshusen*, 630 S.W.3d at 190. Therefore, we determine the TCPA's applicability based on a holistic review of the pleadings. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018).

In the trial court, Michael argued that the new claims were based on or in response to his exercise of the right to petition, the right of free speech, and the right of association. On appeal, however, he limits his argument to the right to petition.

The TCPA provides, in relevant part, that the "[e]xercise of the right to petition" includes a "communication in or pertaining to . . . a judicial proceeding." CIV. PRAC. & REM. § 27.001(4)(A). As such, the TCPA will apply to Suzann's claims involving the JAAR entities and Jennifer only if her claims are based on or in response to Michael's communications in or pertaining to a judicial proceeding. *See id.*

In her eighth amended petition, Suzann alleged causes of action against all of the defendants, including the JAAR entities and Jennifer, for a constructive trust, breach of fiduciary duty, knowing participation in breaches of fiduciary duty, conspiracy, and accounting.

We have previously concluded that, with respect to the previously named parties in the lawsuit, "Suzann's claims for breach of fiduciary duty, knowing participation in breach of fiduciary duty, and conspiracy based on the failure to disclose are not factually predicated on communications." *Ruff III*, 2021 WL 3414754, at *8.

With respect to a conspiracy based on the failure to disclose, we note that Suzann alleges in her eighth amended petition, as she did in prior pleadings, that, in the event the entity defendants (including the JAAR entities) "are not found to be the alter ego of [Michael] . . . then, in the alternative, [the entity defendants] have

9

conspired and are continuing to conspire with [Michael]" in his "continuing breaches of fiduciary duty." Suzann describes those duties as duties requiring Michael to make a "full and complete disclosure" to Suzann. She further alleges that the fiduciary duty in question is "independent of any discovery duty in litigation" such that it "exists before, and continues after, any litigation is filed."

In *Ruff III*, we concluded that this aspect of Suzann's conspiracy claim was based on a failure to communicate, and that it was therefore not within the scope of the TCPA. *Id.* at *6. We see no material difference between the conspiracy claims that are now made against the JAAR entities and Jennifer and the conspiracy claims that were made against the remaining entities in *Ruff III*. Likewise, we see no such distinction in Suzann's claims for breach of fiduciary duty and knowing participation in breach of fiduciary duty. Accordingly, we conclude now, as we did in *Ruff III*, that Suzann's claims against the JAAR entities and Jennifer are not subject to the TCPA.

We also determined in *Ruff III* that Suzann's claims based on a conspiracy to commit the torts that were the subject of the Final Award in arbitration were "communications" for purposes of the right of association.[5] *Id.* at *7. However, in her eighth amended petition, Suzann alleged that the JAAR entities were created *after* the Final Award was issued. As such, Suzann does not allege (and could not be alleging) that the JAAR entities were involved in any conspiracies with Michael that were the subject of the Final Award. Likewise, Suzann's conspiracy claims arising out of the Final Award apply only to the "Entity Defendants." Consequently,

---

[5]In *Ruff III*, we also concluded that Suzann's fraud claims were based on or related to communications. However, those claims were later nonsuited by Suzann, and they are not raised against the JAAR entities and Jennifer, or any other defendants, in her eighth amended petition. *Id.* at *7.

10

Suzann does not plead that Jennifer was involved in the conspiracies with Michael arising out of the Final Award.

We conclude that Suzann's new allegations do not include claims that the JAAR entities and Jennifer have engaged with Michael in "communication[s] in or pertaining to . . . a judicial proceeding."  *See* CIV. PRAC. & REM. § 27.001(4)(A).  Accordingly, the trial court did not err when it determined that the TCPA was inapplicable to the new claims asserted in Suzann's eighth amended petition.  We overrule Michael's first issue.

Because we have determined that the TCPA does not apply to Suzann's new claims, we need not address Michael's second and third issues, which concern Suzann's alleged failure to establish a prima facie case, and the trial court's exclusion of certain evidence filed in support of Michael's TCPA motion.  *See* TEX. R. APP. P. 47.1.

*Sanctions*

In his fourth issue, Michael complains that the trial court abused its discretion when it found that Michael's TCPA motion was frivolous and made solely for the purpose of delay.

"We review a trial court's sanctions order for abuse of discretion."  *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020); *see also Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 811 (Tex. App.—Eastland 2021, no pet.).  A trial court abuses its discretion when it acts arbitrarily or unreasonably or without regard to guiding rules and principles.  *Dipprey*, 637 S.W.3d at 811.  As such, a trial court does not abuse its discretion in levying sanctions if some evidence supports its decision.  *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

The TCPA provides that, where "the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award . . .

11

reasonable attorney's fees to the responding party." CIV. PRAC. & REM. § 27.009(b). In this instance, the trial court determined that the motion in question was both frivolous and solely intended for the purpose of delay.

A motion to dismiss under the TCPA is frivolous "if it has no basis in law or fact and lacks a legal basis or legal merit." *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 243 (Tex. App.—Eastland 2019, no pet.); *see also Ruff III*, 2021 WL 3414754, at *9. In *Ruff III*, we determined that Suzann's claims based on breach of fiduciary duty and failure to disclose did not arise out of "communications" as defined in the TCPA. 2021 WL 3414754, at *6. Thereafter, our ruling became the law of the case. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) ("Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case.").

While the JAAR entities and Jennifer had not yet been joined as parties at the time we decided *Ruff III*, the allegations that were later made against them are identical in every material respect; that is, the allegations involving all of the various entities are based on claims that they are being used to secret away funds that were stolen from Suzann. Furthermore, the allegations against the JAAR entities and Jennifer do not purport to describe "communications" that are of a different nature when compared to the allegations against the remaining parties.

Additionally, as we have already stated, it is apparent from a plain reading of Suzann's operative pleading that any claims arising out of a communication-based conspiracy do not apply to the JAAR entities and Jennifer.

Based on the absence of any material distinction between the allegations in the seventh amended petition and the allegations in the eighth amended petition against the JAAR entities and Jennifer, the trial court could have reasonably

12

concluded that the motion to dismiss under the TCPA had no basis in law or fact, and that it otherwise lacked any legal basis or merit. *See Caliber Oil*, 591 S.W.3d at 243.

Furthermore, given the frivolous nature of the motion, Michael's knowledge of this court's prior ruling in *Ruff III*, and Michael's history of repeatedly deploying procedural mechanisms to intentionally delay the progress of the litigation, the trial court could also have reasonably determined that the motion—which had no reasonable hope of success—was filed solely for purposes of delaying proceedings.

We conclude that the trial court did not abuse its discretion in determining that Michael has engaged, as he has in the past, in sanctionable conduct under the TCPA and we overrule Michael's fourth issue. Furthermore, having found that his conduct at issue is sanctionable, we overrule Michael's fifth issue, which complains that the trial court should not have awarded attorneys' fees.[6]

### This Court's Ruling

We affirm the trial court's order of January 20, 2023.

JOHN M. BAILEY
CHIEF JUSTICE

October 31, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[6]Michael argues that if the motion was not frivolous or solely for delay, then the trial court erred in issuing an award of attorneys' fees. He does not complain that the amount of fees was otherwise excessive.